UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RICHARD DUAFALA, Representative of
ComSource, Inc. Stockholders,

        Plaintiff,

   -against-

GLOBECOMM SYSTEMS INC.,

        Defendant.
-----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 13-4944

(Wexler, J.)

APPEARANCES:

Gallagher, Harnett & Lagalante LLP
By:   Brian K. Gallagher, Esq.
380 Lexington Avenue
New York, NY 10168
Attorneys for Plaintiff

Stein Sperling Bennnett DeJong Driscoll PC
By:   Jeffrey M. Schwaber, Esq.
       Deanna L. Peters, Esq.
25 West Middle Lane
Rockville, MD 20850
Attorneys for Plaintiffs

Kramer Levin Naftalis & Frankel LLP
By:   Jonathan M. Wagner, Esq.
       Tobias B. Jacoby, Esq.
1177 Avenue of the Americas
New York, NY 10036
Attorney for Defendant

WEXLER, District Judge:

      Before the Court is the motion of Globecomm Systems Inc. ("Globecomm" or

"Defendant") to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §

1, *et seq.*, or to dismiss Plaintiff's breach of contract claims and request for accounting pursuant

to Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 12(b)(6). Defendant also seeks to dismiss, or alternatively stay, Plaintiff's fraud claim pursuant to Fed.R.Civ.P., Rules 8(a), 9(b) and 12(b)(6). For the reasons that follow, Defendant's motion to compel arbitration is granted, and accordingly, Defendant's motions to dismiss the breach of contract and accounting claims are denied. Defendants' motion to dismiss the fraud claim is denied, and the motion to stay that claim pending arbitration is granted.

## BACKGROUND

### I. Factual Background

#### A. The Agreement

The facts that follow are taken from Plaintiff's Amended Complaint ("AC" or "Complaint") or the parties' Agreement and Plan of Merger (the "Agreement"). This action stems from the purchase of ComSource, Inc. ("ComSource") by Globecomm through the Agreement entered into on April 8, 2011. AC, ¶ 1. ComSource, founded in 2004, provides engineering services, software development and testing for telecommunications equipment. By the end of 2010, it achieved unaudited revenues of $22.7 million. AC, ¶ 6. Because of his health issues, ComSources' majority stockholder, Jerald C. Cruce ("Cruce") sought to sell the company and used an investment banking firm to market the company to potential purchasers. AC, ¶ 7.

The goal of the ComSource's stockholders was to obtain the highest value for their shares and ensure that ComSource's business would continue to grow. AC, ¶ 10. Globecomm made an offer which included an initial cash payment, as well as additional cash and stock earn out payments ("Earn Out Payments") in each of the two years following the merger, based on the amount of business conducted in each of those two years. AC, ¶¶ 11-14. Based on

Globecomm's representations that it had the resources and desire to continue to grow ComSource's business, ComSource's stockholders rejected other offers with a higher initial cash payment in favor of Globecomm's offer. AC, ¶¶ 11-12.

The Agreement was executed and effective as of April 8, 2011. Section 2.05 of the Agreement and its Exhibit G detail how the Earn Out Payments would be calculated for Year 1 and Year 2. Such payments would be made after Globecomm met certain earnings targets, or Earnings Before Interest, Taxes, Depreciation, and Amortization ("EBITDA"). AC, ¶ 15. Thus, calculation of the EBITDA was the first step in determining the value of the Earn Out Payments.

An Earn Out Payment was made in Year 1 in the amount of $4,700,000. AC, ¶¶ 18-19. Therefafter, starting in June 2012, Globecomm estimated that it did not expect to make an Earn Out Payment in Year 2. AC, ¶¶ 20-21. On April 22, 2013, Globecomm sent a notice to Richard Duafala as the Stockholders' Representative,[1] that based on the EBITDA for Year 2, no Earn Out Payments were due. AC, ¶ 22. According to the Complaint, Globecomm's EBITDA figure for Year 2 was an 82% drop from Year 1 and a "vast departure" from the level of business conducted by ComSource at the time of the Agreement. AC, ¶ 23.

After receiving that notice, Duafala and an accountant traveled to see certain books and records as permitted by the Agreement, and soon thereafter, Duafala sent Globecomm an Earn Out Dispute Notice, requesting to see certain documents, pursuant to Section 2.05(b). AC ¶¶ 25-

---

[1] The Agreement names Jerald L. Cruce as Stockholders' Representative, and designates Richard Duafala, as Stockholders' Representative in the event of the permanent disability or death of Mr. Cruce. See Agreement, at 1; Section 2.07. The Stockholders' Representative is authorized to "take any and all additional action as is contemplated to be taken by or on behalf of the Company Stockholders by the terms of this Agreement." See Agreement, Section 2.07(a). Duafala brings this action as Plaintiff in that capacity. AC, ¶ 1-2.

26. Duafala alleges the information requested was not produced, and that the EBITDA figures were "incorrect" and "undervalued." AC, ¶¶ 28-31.

Section 2.05 of the Agreement, titled "Earn Out," describes how the EBITDA is calculated and the Earn Out Amounts determined. In the event of a dispute over the calculation of the EBITDA, Section 2.05(b) provides that such dispute shall be settled "in accordance with the procedures set forth in Section 2.03(c)," which states:

> all amounts remaining in dispute shall be submitted for resolution to a recognizable, reputable and impartial certified public accounting firm that is mutually acceptable to Parent and Stockholders' Representative (the "Neutral Firm") .... Within thirty (30) days, ... the Neutral Firm shall deliver its determination ... [which] shall be binding, final and conclusive.

Section 2.03(c): <u>Dispute</u>.

### B. The Amended Complaint

Plaintiff's Amended Complaint alleges that Defendant breached Section 2.05(d) of the Agreement by "chilling" and ultimately "eliminating" ComSource's business following the closing date and during the Earn Out measurement periods. Section 2.05(d) obligates Globecomm to continue to operate the business diligently and to maximize the EBITDA. Specifically, Globecomm covenants to

> (i) operate [ComSource] diligently and in the ordinary course of business, as consistent with the operations of the Company heretofore,... (ii) not take any actions that would materially change the operations of the Business or...prevent [ComSource]... from conducting its business...or preserving...relationships with customer, suppliers or others;... (iv) use commercially reasonable efforts to facilitate [ComSource] in its efforts to maximize EBITDA; and (v) not take any action intended to circumvent payment of the maximum Earn Out Amounts under Section 2.05 hereunder.

AC, ¶ 17-18; Agreement, Section 2.05(d): <u>Post-Closing Operations</u>.

Plaintiff alleges that, amongst other things, Globecomm "shifted and reassigned" business

from ComSource to another Globecomm subsidiary "in a purposeful effort to reduce the EBITDA" to avoid any Year 2 payment. AC, ¶¶ 33-35. Plaintiff also alleges breach of the implied duty of good faith and fair dealing, requests an accounting pursuant to Section 2.03(c), and brings a claim for fraud, alleging that ComSource stockholders relied on Globecomm's misrepresentations that it would grow ComSource's business and reach higher earn out payments, and in reliance thereon, rejected other more favorable purchase offers in favor of Globecomm's offer. AC, ¶¶ 36-52.

Defendant moves to compel arbitration of the breach of contract claims and the request for an accounting, arguing these claims are essentially a dispute over the calculation of the EBITDA, which the parties agreed to arbitrate. Alternatively, Defendant seeks to dismiss those claims for failure to state a claim under Rule 12(b)(6). Defendant also moves to dismiss the fraud claim for failure to plead with sufficient particularity under Rule 9(b), and for failure to state a claim under Rule 12(b)(6), or alternatively, moves to stay the fraud claim pending arbitration of the contract and accounting claims.

## DISCUSSION

I.  Legal Principles

   A.  Standards on a Motion to Compel Arbitration

In determining whether a claim should be arbitrated, the Court must determine (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. See JLM Industries, Inc. v. Stolt-Nielsen SA,

387 F.3d 163, 169 (2d Cir. 2004) (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75–76 (2d Cir. 1998)); E.S. Originals Inc. v. Totes Isotoner Corp., 734 F.Supp.2d 523, 529 (S.D.N.Y. 2010).

"Federal policy strongly favors the enforcement of arbitration agreements." Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc., 369 F.3d 645, 654 (2d Cir. 2004) (citing 9 U.S.C. § 2; Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Yet, arbitration is "'a matter of consent, not coercion.'" JLM Industries, Inc., 387 F.3d at 171, (quoting Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). It is a "'matter of contract,' and therefore 'a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" JLM Industries, Inc., 387 F.3d at 171 (quoting Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (other citations omitted). Thus, "[w]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, but not more so.'" JLM Industries, Inc., 387 F.3d at 171 (quoting Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 364 (2d Cir. 2003) (other citations omitted). Thus, the court deciding a motion to compel arbitration must first determine "whether the parties agreed to arbitrate that dispute." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 225 (2d Cir.), cert. denied, 122 S.Ct. 546 (2001) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouht, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (internal quotations omitted)).

The scope of the arbitration clause is critical to determining whether the parties have

agreed to arbitrate the claim at issue. The Second Circuit has instructed that the court should first classify whether the clause is either "broad" or "narrow." "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir.), cert. denied, 122 S.Ct. 546 (2001) (citing Cornell Univ. v. UAW Local 2300, 942 F.2d 138, 140 (2d Cir. 1991) and quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995)). If the clause is narrow, the court must consider whether the "issue is on its face within the purview of the clause." McDonnell Douglas Finance Corp. v. P.P. & L. Co., 858 F.2d 825, 832 (2d Cir. 1988) (quoting Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80, 605 F.2d 1290, 1295 (2d Cir. 1979) (internal quotations omitted) (other citations omitted). "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, this Court 'focus[es] on the factual allegations in the complaint rather than the legal causes of action asserted.'" Specht v. Netscape Communications Corp., 306 F.3d 17, 36 (2d Cir. 2002) (quoting Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987)); E.S. Originals Inc. v. Totes Isotoner Corp., 734 F.Supp.2d 523, (S.D.N.Y. 2010).

II.  Disposition of the Motion

    A.  Defendant's Motion to Compel Arbitration

    1. Agreement to Arbitrate

The Court first must determine whether the parties here agreed to arbitrate. JLM

-7-

Industries, Inc., 387 F.3d at 169. It is clear to the Court that Section 2.05(b) reflects an intent to arbitrate. The Agreement explicitly states that if there is a dispute concerning the calculation of the EBITDA, the parties "shall settle any such dispute in accordance with the procedures outlined in Section 2.03(c)." Section 2.03(c) details that "all amounts remaining in dispute shall be submitted for resolution to a recognizable, reputable and impartial certified public accounting firm..." and that such firm "shall deliver its determination of the amounts remaining in dispute,...which determination shall be final, binding and conclusive." The Court finds that this clear language reflects an intention to arbitrate. That these clauses do not contain the word "arbitrate" or "arbitrator" is not definitive on whether there is such an agreement. See McDonnell Douglas Finance Corp. v. P.P. & L. Co., 858 F.2d at 830.

### 2. Scope of the Arbitration Agreement

Next, it is necessary to determine the scope of the arbitration clause. The Court finds that the clause here is a narrow one. It is contained in Section 2.05: *Earn Out*, dealing with the additional "consideration payable and/or issuable to the Company Stockholders in respect of the Purchase Price pursuant to Section 2.02." The language of the clause itself is specific to disputes concerning the EBITDA, and is not a clause intended to cover all disputes that might arise between the parties. Indeed, the "Miscellaneous" article of the Agreement states that "any suit or proceeding related to or arising out of this Agreement" shall be brought in New York State Court, Suffolk County or the Eastern District of New York. See Agreement, Section 12.06: *Jurisdiction*. Thus, the Court finds that this clause is narrow by its own terms and governs disputes concerning calculation of the EBITDA. The Plaintiff agrees. See Plaintiff's Memorandum in Opposition ("Pl. Mem.") , at 5-6.

The question here is whether the scope of the clause also governs Plaintiff's claims that Defendant breached Section 2.05(d) of the Agreement by "chilling" the growth of ComSource to minimize the EBITDA. Section 2.05(d): <u>Post-Closing Operations</u>, obligates the Defendant to operate the business "diligently" and "consistently," not take any actions that would "materially change the operations," use commercially reasonable efforts "to maximize EBITDA," and "not take any action intended to circumvent payment of the maximum Earn Out Amounts under Section 2.05." See Agreement, Section 2.05(d). Plaintiff argues that Defendant breached these terms, AC, ¶ 33-34, and this dispute is beyond the scope of the arbitration clause concerning calculation of the EBITDA.

Defendant claims this dispute is about the calculation of the EBITDA, which Plaintiff admits in the complaint when he alleges that "the EBITDA figure for Year 2 is incorrect and undervalued." AC, ¶ 31. Defendant claims Plaintiff further admits this by alleging that "Globecomm shifted and re-assigned business and contracts that were to be performed by [ComSource] to Globecomm for performance by another of Globecomm's wholly owned subsidiaries. Globecomm took these actions in violation of § 2.05(d) of the Agreement, in a purposeful effort to reduce the EBITDA figure for Year 2 to the point that no Earn Out Payment would be due to ComSource Stockholders." AC, ¶ 34.

The Court finds that the dispute here is within the scope of the arbitration clause agreed by the parties to govern a dispute about the calculation of the EBITDA. The complaint itself alleges that the EBITDA was undervalued and incorrect, which led to the non-existent Year 2 Earn Out Payment. While Plaintiff argues that this constitutes a breach of the duties in Section 2.05(d), the essence of the dispute is that the EBITDA is incorrect or was miscalculated. It is

clear from the language in Section 2.05(b) that the parties intended any dispute on the calculation of the EBITDA should be handled as described in Section 2.03(c) and "submitted for resolution to a recognizable, reputable and impartial certified pubic accounting firm" for a "final, binding and conclusive" determination. See Section 2.05(b); Section 2.03(c).

Defendant argues that E.S. Originals Inc. v. Totes Isotoner Corporation, 734 F.Supp.2d 523 (S.D.N.Y. 2010) is instructive here. At issue in that case was an agreement to make "earn-out payments" following an asset purchase arrangement, and provided that disputes concerning the earn-out payments be submitted to an independent accounting firm for resolution. The plaintiff brought breach of contract and fraud claims, yet the court ruled that the claims were governed by the narrow arbitration clause, noting that the allegations of the complaint focused on accounting matters and improper calculations, which were "on their face" within the scope of the arbitration clause. Id., 734 F.Supp.2d at 530-531. Defendant here argues that since the Plaintiff's allegations also focus on "incorrect" and "undervalued" EBITDA, this Court should similarly find that the claims are governed by the arbitration clause.

Plaintiff argues otherwise, urging that this Court be guided by other rulings in this Circuit, namely McDonnell Douglas Finance Corp. v. P.P. & L. Co., 858 F.2d 825 (2d Cir. 1988) and XL Capital, Ltd. v. Kronenberg, 2004 WL 21001952 (S.D.N.Y. 2004). McDonell involved a stock purchase agreement that permitted the defendant utility, PP&L, to call for the redemption of preferred shares and to indemnify shareholders who suffered certain economic losses. The agreement included a narrow arbitration clause stating that any dispute concerning the "computation of the amount of the required indemnity payment or refund thereof...or with the good faith determination of [PP&L] that there is a substantial risk of [indemnification]," be

referred to an independent tax counsel. McDonnell, 858 F.2d at 827. Plaintiff shareholders brought a lawsuit, claiming that the call for redemption was wrongful and in bad faith, and PP&L argued those claims were covered by the arbitration clause. The district court found the claims were not within the scope of the arbitration clause, and the Second Circuit affirmed, ruling that the clause was intended to reach only tax issues, including PP&L's good faith interpretation of those tax issues, and not the broader questions of PP&L's bad faith or wrongful conduct. Id., at 832-833.

XL Capital, Ltd. v. Kronenberg, 2004 WL 21001952 (S.D.N.Y. 2004), also involved a stock purchase agreement that provided for arbitration with the AAA of "all questions, issues or disputes," yet disputes on the worksheets reflecting calculations of an "earned payout amount" that might trigger additional payment to the sellers were to be referred to an accounting firm for resolution. Id., at *1. The sellers filed a formal demand for arbitration of claims for fraud and deceitful conduct, negligent misrepresentation and breach of contract. In response, the purchaser argued the claims were governed by the narrow clause mandating resolution by the accounting firm. The court ruled that the claims of fraud and breach of contact were outside the scope of the narrow accounting arbitration clause since it was clear the parties "did not contemplate that non-accounting issues such as fraud and breach of contract would be submitted to an accounting firm." Id., at *2. Thus, the Court found that those claims were covered by the parties broader clause to arbitrate before the AAA. Id.

In affirming, the Second Circuit questioned whether the "fraud, negligent misrepresentation, and breach of contract claims here are simply accounting issues in disguise." The court noted the distinction that these claims did not challenge the accuracy of the earned

payout amounts, stating that "the gravamen of the claims before the AAA is that after the alleged fraud or breach, the Worksheets necessarily lead to a lower earn out payment. In that sense, the claims assume accurate calculation of the Worksheets in order to make out the causal nexus to the claimed damages." XL Capital, Ltd. v. Kronenberg, 145 Fed.Appx. 384, 385 (2d Cir. 2005). The Court affirmed the district court's decision that the claims were outside the scope of the narrow, accounting arbitration clause, but stated that "any portion of the dispute...which turns on an objection to the Worksheet rather than an objection to acts" must be referred to the accountant under the narrow arbitration clause. Id., 145 Fed.Appx at 386.

Taken together, these case lead to the conclusion that Plaintiff's claims here are within the scope of the arbitration clause. Plaintiff's complaint itself challenges the accuracy of the calculations, specifically the "incorrect" and "undervalued" EBITDA. AC, ¶ 31. In essence, this is an accounting dispute regarding how the EBITDA was calculated, and what numbers were used to calculate the EBITDA. While Plaintiff styles the claims as breach of contract, he alleges that Globecomm "shifted and reassigned business and contracts that were to be performed by [ConSource] to Globecomm for performance by another of Globecomm's wholly owned subsidiaries." AC, ¶ 34. Thus, the claims here, like the challenge to the calculation of the earned out payments in E.S. Originals Inc. are governed by the limited arbitration clause. The claims in XL Capital, Ltd. and McDonnell, which concern conduct as opposed to calculations, are distinguishable from those at issue here. Since the Court finds the claims here to in essence be claims concerning the calculation of the EBITDA, the Court finds that those claims are within the scope of the arbitration agreement between the parties. Therefore, Defendant's motion to compel arbitration of Plaintiff's claims for breach of contract and request for an accounting is

granted, and the motion to dismiss those claims is denied.

    B.    <u>Motion to Dismiss or Stay Plaintiff's Fraud Claim</u>

Defendant also moves to dismiss Plaintiff's fraud claim, arguing that Plaintiff, as the Stockholder Representative, does not have standing to bring a fraud claim, that Plaintiff has not properly plead fraud, and that the claim should be dismissed as duplicative of the breach of contract claim. Alternatively, Defendant moves that the fraud claim be stayed pending the arbitration. The Court grants Defendant's motion that this claim be stayed pending the arbitration. <u>See</u> 9 U.S.C. § 3. Nevertheless, the Court addresses Defendant's following arguments and denies Defendant's motion to dismiss.

    1. <u>Standing</u>

The Court finds that Plaintiff, as the Stockholder Representative, has standing to bring a fraud claim. As stated above, the Agreement appoints the Stockholder Representative to "act on behalf of each [stockholder] in connection with...this Agreement" and "to take any and all additional action as is contemplated to be taken by or on behalf of the [shareholders] by terms of this Agreement." <u>See</u> Agreement, Section 2.07(a). The Court finds that this provides the Stockholder Representative with sufficient standing to bring the fraud claim.

    2. <u>Sufficient Pleading</u>

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of Plaintiff. <u>Bold Electric, Inc. v. City of New York</u>, 53 F.3d 465, 469 (2d Cir. 1995). Reciting bare legal conclusions is insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). A pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Id., at 678-679.

Fed. R.Civ.P., Rule 9(b) requires that fraud be pled with particularity. To establish fraud, a plaintiff must show "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 18 (2d Cir. 1996) (citations omitted). Plaintiff alleges that Globecomm knew that the ComSource stockholders sought to grow the business after the purchase, and it represented that it had the resources and revenue to grow the business and make earn out payments. AC, ¶¶ 10-11, 41. Plaintiff further alleges that in reliance on these representations, which he alleges were false, the ComSource stockholders accepted Globecomm's offer over others, and were damaged as a result. AC, ¶¶ 42-46.

Accepting Plaintiff's allegations as true as required on a motion to dismiss, and yet reviewing the allegations for the required specificity, the Court finds that the Plaintiff has sufficiently pleaded a fraud claim. The Court also rejects Defendant's argument that Plaintiff's claim fails because New York law does not permit a fraud claim where the fraud relates to the breach of contract. See Helios Intern. S.A.R.L. v. Cantamessa USA, Inc., 2013 WL 3943267 (S.D.N.Y. 2013). Here, the fraud claim concerns representations made in connection with the sale of ComSource to Globecomm, while the breach of contract claim concerns the calculation of the EBITDA and the failure to make the Year 2 Earn Out Payment. Thus, the Court denies

Defendant's motion to dismiss the fraud claim,[2] and grants Defendant's motion to stay that claim pending the arbitration of Plaintiff's other claims.

## CONCLUSION

Defendant's motion to compel arbitration of Plaintiff's claims for breach of contract and for an accounting is granted. Defendant's motion to dismiss Plaintiff's fraud claim is denied; and the motion to stay the fraud claim pending the arbitration is granted.

SO ORDERED.

s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
February 5, 2015

---

[2] Defendant also argues the fraud claim should be dismissed for Plaintiff's failure to sufficiently plead damages, claiming that under New York law, a fraud plaintiff cannot recover "the loss of an alternative bargain" and is limited to the "out of pocket" rule, which compensates a plaintiff "for what they lost because of the fraud, not to compensate them for what they might have gained." Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996). In response, the Plaintiff appears to argues that Maryland law applies to the fraud claim. In light of the stay of the fraud claim pending arbitration, the Court declines to rule on this question.